UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CLAYTON ROBERT ADAMS,<br><br>    Plaintiff,<br><br>  v.<br><br>CCA; PHILLIP VALDEZ, TIM<br>WENGLER, TOM KESSLER, JOSEPH<br>CORDONA, and CHESTER PENN,<br><br>    Defendants. | Case No. 1:11-CV-00204-BLW<br><br>**INITIAL REVIEW ORDER** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of his status

as an inmate and his in forma pauperis request. The Court now reviews the Complaint to

determine whether any of the claims should be summarily dismissed under 28 U.S.C. §§

1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the

Court enters the following Order.

**PLAINTIFF'S IN FORMA PAUPERIS APPLICATION**

To file a civil complaint in federal court, a litigant must either pay the filing fee in

full at the time of filing or seek in forma pauperis status, which allows the litigant to pay

the filing fee over time. In either case, the litigant must pay the full filing fee for having

filed the complaint, regardless of whether that person's case is eventually dismissed or is

unsuccessful.

**INITIAL REVIEW ORDER  1**

Plaintiff has requested in forma pauperis status. In his Affidavit, Plaintiff states that he receives approximately $100 a month from family, which would equal approximately $1,200 per year. (Dkt. 4.) His prison trust account shows income of approximately twice that amount: $1,185.00 in gifts and $14.30 in prison employment income in the *six-month period* between October 2010 and April 2011. (Dkt. 5.) Because all of Plaintiff's basic needs are paid for by the State during incarceration, it appears that Plaintiff has sufficient funds to afford the costs of litigation.

Based upon all of the foregoing, the Court will deny Plaintiff's Motion. Plaintiff will be required to pay the $350.00 filing fee to the Clerk of Court no later than 150 days after entry of this Order, or his case will be dismissed without prejudice. The fee may be paid in increments.

Plaintiff will be responsible for obtaining summonses for service of process upon Defendants. Plaintiff shall serve Defendants within 120 days after entry of this Order, or claims against unserved Defendants will be dismissed without prejudice.

## REVIEW OF PLAINTIFF'S COMPLAINT

### 1. Standard of Law Governing Review of Inmate Complaints

The Court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915(e) and 1915A. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks

**INITIAL REVIEW ORDER 2**

monetary relief from a defendant who is immune from such relief. *Id.*

Plaintiff brings Fourth Amendment claims under 42 U.S.C. § 1983, the civil rights statute. To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), the court outlined the requirements for a finding of proximate causation:

> Liability under section 1983 arises only upon a showing of personal participation by the defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983.

Therefore, Plaintiff must link each Defendant to the specific action he alleges is unconstitutional or violates state law. In addition, Plaintiff may seek injunctive relief from officials who have direct responsibility in the area in which Plaintiff seeks relief. *See Ex parte Young*, 209 U.S. 123, 157-58 (1908)*; Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

## 2.      Factual Allegations

The gravamen of Plaintiff's Complaint is that Warden Valdez revealed information about Plaintiff's prison psychiatric care to Plaintiff's mother, Laurie Adams, without Plaintiff's consent. On May 15, 2009, Plaintiff's mother visited Plaintiff at the prison. (Affidavit of Laurie Adams, Dkt. 1-2.) She noticed that Plaintiff looked and behaved very

**INITIAL REVIEW ORDER  3**

out of the ordinary, observing that Plaintiff "chose to be very secretive and would not tell

me anything." (*Id.*) Plaintiff's mother was "terribly worried" and had "no confidence that

the prison would do what was best for his good health." (*Id.*)

On May 18, 2009, Plaintiff's mother wrote the following letter to Defendant

Warden Phillip Valdez:

> Dear Warden Valdez,
>
> I'm writing in regards to my son, Clayton Adams. I was in to visit him last Friday, May 15, 2009, and was very concerned about his behavior. I know Clayton is being medicated right now by your doctor and it is painfully obvious that the medication is not doing anything good for Clayton. He was very agitated, his emotions were all over the place, he seemed extremely tired at one point and he was having a difficult time focusing. His skin looked excessively dry and he's *very thin*. I am *gravely concerned* about him. It is very hard to see Clayton like this and know that he needs help and that I cannot help him myself. Something needs to be done. He is not himself. The medication is not doing him or anyone else any good.
>
> I know that you are very busy and have a lot to do, but I would very much appreciate it if you would look into this matter.
>
> I have also sent a letter to Medical; however, I do not know the name of the doctor treating my son. I hope you will make sure that the doctor knows of my concerns because Clayton is really not doing well.
>
> Thank you very much for your time.

(Exhibit A to Complaint, Dkt. 1-1, p. 1.)

On May 26, 2009, Warden Valdez responded to Plaintiff's mother's letter as

follows:

> Dear Ms. Adams:
>
> I received your letter concerning your son Clayton who is an inmate housed in our facility. In your letter you pointed out your concerns about his recent behavior and the medication that he is taking.
>
> I have spoken with our Health Services Department, and they have reported the following information to me. Clayton has been non-compliant to his medical regimen, and because of that, has been educated on the dangers of being non-compliant to his medical regimen.
>
> He was last seen by a specialist, Dr. Khatain on May 10, 2009, and is scheduled to see him again on May 31, or sooner if Clayton feels the need to see him before then.
>
> I hope this answers your questions, and serves to relieve your concerns.

 (Exhibit C to Complaint, Dkt. 1-1, p. 1.)

3.      **Discussion**

A.      *Fourth or Fourteenth Amendment*

The United States Supreme Court has held that the United States Constitution

protects a right to privacy regarding "the individual interest in avoiding disclosure of

personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977). Courts have recognized an

inmate's right to privacy and confidentiality in his own medical records under the

Fourteenth Amendment, *see Powell v. Schriver*, 175 F.3d 107 (2d Cir. 1999), and a

citizen's right to privacy in personal information contained in police investigative reports.

*See Scheetz v. Morning Call, Inc.*, 747 F.Supp. 1515 (E.D.Pa. 1990).

In *Seaton v. Mayberg*, 610 F. 3d 530, 537-39 (9th Cir. 2010), the United States

Court of Appeals for the Ninth Circuit recognized a limited right to informational privacy

protected by the Fourteenth Amendment's Due Process Clause. In *Seaton*, an inmate

objected to disclosure of his mental health records to the district attorney's office without

the inmate's consent, where the inmate's mental health was being studied to determine

whether the State should seek the inmate's commitment under California's Sexually

Violent Predator Act. The Ninth Circuit Court held:

> One who goes to a physician in order to obtain medical benefit to himself or his family has substantial privacy interests that may or may not be constitutionally protected. One who is compelled to submit to medical examination for the benefit of the public, to determine whether because of mental disease he is likely to engage in sexually predatory behavior, does not.

*Id*. at 541.

In a case that had facts more similar to those at hand, *Doe v. Delie*, 257 F.3d 309

(3rd Cir. 2001), the United States Court of Appeals for the Third Circuit applied the

*Turner v. Safley* test to a Fourteenth Amendment claim where the inmate alleged that his

HIV-positive status had been wrongfully disclosed, violating his right to privacy. That

Court reasoned:

> [A] prisoner's right to privacy in this medical information is not fundamentally inconsistent with incarceration. Therefore, we join the Second Circuit in recognizing that the constitutional right to privacy in one's medical information exists in prison. *See Powell*, 175 F.3d at 112.

> We acknowledge, however, that a prisoner does not enjoy a right of privacy

**INITIAL REVIEW ORDER 6**

in his medical information to the same extent as a free citizen. We do not suggest that Doe has a right to conceal this diagnosed medical condition from everyone in the corrections system. Doe's constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security.

Specifically, an inmate's constitutional right may be curtailed by a policy or regulation that is shown to be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

257 F.3d at 317.

Under these standards, the Court finds that Plaintiff has stated a colorable claim, liberally construed as a Fourteenth Amendment claim, upon which he can proceed. Plaintiff has stated sufficient factual allegations to proceed against Warden Valdez, who made the written disclosure to Plaintiff's mother. However, Plaintiff may not sue the other individual Defendants, who were involved only after the disclosure was completed, and who participated in the administrative grievance procedures reviewing the alleged violation, but did not cause the alleged violation. An essential element of a § 1983 case is that the plaintiff show that the defendants' actions caused the deprivation of a constitutional right. 42 U.S.C. § 1983*; Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

To bring a civil rights claim against a municipality, local governing body, (or private entity performing a public function), such as CCA ("Correctional Corporation of America," the employer of Warden Valdez), Plaintiff must allege sufficient facts in the complaint meeting the test articulated in *Monell v. Department of Social Services of New*

**INITIAL REVIEW ORDER 7**

*York*, 436 U.S. 658, 69-194 (1978): (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Here, Plaintiff's Exhibits show that Warden Valdez acted out of compassion for Plaintiff's mother, but against CCA's nondisclosure policy. (Exhibits to Complaint, Dkt. 1-1, p. 8.) There are no allegations showing that CCA had a policy permitting Warden Valdez to disclose Plaintiff's mental health treatment information to Plaintiff's mother. Therefore, Plaintiff has failed to state a claim against CCA.

Neither may Plaintiff proceed against any defendant for injunctive relief, because Warden Valdez is no longer employed at CCA, and there is no likelihood that such a violation would occur in the future. In *Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983), the United States Supreme Court held that the plaintiff could sue Los Angeles police officers for damages for applying a chokehold to him without provocation during a routine traffic stop, but that he could not seek equitable relief in the absence of a realistic threat of similar future injury. In *Hodgers-Durgin v. DeLaVina*, 199 F.3d 1037 (9th Cir. 1999), the United States Court of Appeals for the Ninth Circuit Court of Appeals reviewed the district court's granting of summary judgment in favor of supervisory officials of the U.S. border patrol, dismissing plaintiffs' claim for a declaratory judgment declaring that border officials' practices of randomly stopping drivers with Hispanic

**INITIAL REVIEW ORDER  8**

physical characteristics was unconstitutional. Each plaintiff had asserted that he or she

was stopped once in his or her ten years of frequent driving along the border of the United

States and Mexico. The Ninth Circuit Court affirmed the district court's decision, holding

that plaintiffs had not shown a real or immediate threat that they would be wronged again

in the future, based on their past record of having been stopped only once in ten years.

199 F.3d at 1042. Injunctive relief "is designed to deter future misdeeds, not to punish

past misconduct." *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).

###    B.    *HIPAA*

There is no private right of action under the Health Insurance Portability and

Accountability Act of 1996 (HIPAA), Pub. L. No. 104–191, 110 Stat. 1936 (1996)

(codified primarily in Titles 18, 26, and 42 of the United States Code). *See Webb v. Smart*

*Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). HIPAA does not contain

any express language conferring privacy rights upon individuals and does not identify a

class of persons as the intended beneficiaries of its protections. Instead, it focuses on

regulating persons that have access to an individual's medical information and who

conduct certain health care transactions. *See* 42 U.S.C. § 1320d-1. In addition, HIPAA

expressly provides penalties for improper disclosures of medical information and limits

enforcement to the government. *See* 42 U.S.C. §§ 1320d-5 & d-6.

Because HIPAA does not make available a private right or cause of action as a

means of enforcement, Plaintiff states no claim for injunctive or monetary relief based

upon alleged violations of the HIPAA protections. Hence, this claim is subject to

**INITIAL REVIEW ORDER  9**

dismissal with prejudice for failure to state a claim upon which relief can be granted.

### C.     *State Law Claims*

Plaintiff also asserts state-law claims of negligence, medical malpractice, and defamation. Title 28 U.S.C. § 1367 provides that a district court may exercise supplemental jurisdiction over state claims when they are "so related" to the federal claims "that they form part of the same case or controversy under Article III of the United States Constitution." In other words, the supplemental jurisdiction power extends to all state and federal claims which one would ordinarily expect to be tried in one judicial proceeding. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Plaintiff may not sue the former and current warden for medical malpractice, as these Defendants are not medical professionals. Plaintiff may proceed on his state-law negligence and defamation claims against Warden Valdez, and his employer CCA, to the extent that he has set forth facts that would meet the elements of those torts. For example, Plaintiff will bear the burden to show that the mental health information transmitted was false in light of his medical records and the testimony of his medical providers. *See Wiemer v. Rankin*, 790 P.2d 347, 348 (Idaho 1990).

**D.** *Remedies*

    (1)    <u>Fines</u>

Plaintiff seeks fines, presumably under HIPAA. Because a HIPAA fine must be

pursued by the government, Plaintiff may not request imposition of, or recovery for, fines.

    (2)    <u>Punitive Damages</u>

Plaintiff also seeks punitive damages. To obtain a punitive damages award, a

plaintiff must show that "a defendant's conduct [was] motivated by evil motive or intent,

or [] involve[d] reckless or callous indifference to the federally protected rights of

others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiff has set forth no facts that would

support a punitive damages claim, and it seems difficult to fathom that reckless

indifference to Plaintiff's constitutional rights could be shown where Warden Valdez was

simply trying to allay the fears of Plaintiff's mother about her personal observations of her

son's poor mental health condition.

    (3)    <u>Compensatory Damages</u>

Plaintiff should also be aware that the issue of available types of damages for

injuries not of a physical nature is quite unsettled. The general rule in nonprisoner civil

rights cases is that "the abstract value of a constitutional right may not form the basis for

§ 1983 damages." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 308

(1986). Rather, "compensatory damages may include not only out-of-pocket loss and

other monetary harms, but also such injuries as impairment of reputation, personal

humiliation, and mental anguish and suffering." *Id*. at 307 (internal punctuation and

**INITIAL REVIEW ORDER  11**

citation omitted). It is an open question whether this rule applies in *prisoner* cases as a result of enactment of the Prison Litigation Reform Act (PLRA). Particularly, 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury."

While some courts have held that § 1997e(e) bars a prisoner's claim in its entirety where there is no physical injury (in the context of First Amendment rights without physical injury), the Ninth Circuit has held that "[t]he deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred." *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). This holding, read in the context of the principles in *Stachura, supra*, seems to suggest that inmates can still obtain injunctive or declaratory relief, nominal damages, and compensatory damages for out-of-pocket loss. Neither the Ninth Circuit nor the United States Supreme Court has clarified the extent to which compensatory damages can be awarded in a right-to-privacy prisoner case.

Other courts have addressed this issue, but the opinions are not of precedential value. *See Webb v. Evans*, 2006 WL 6599190 (S.D. Tex. 2006)("Webb's failure to allege physical injury falls squarely within section 1997e(e), precluding his recovery of compensatory damages for emotional or mental injuries allegedly sustained as the result of the purported Fourteenth Amendment right to privacy violation."); *Doe v. Delie*, 257 F.3d at 314 ("Therefore, while Doe's claims for compensatory damage are barred by §

**INITIAL REVIEW ORDER  12**

1997e(e), his claims for nominal damages survive."). Therefore, unless Plaintiff has suffered actual out-of-pocket damages from the alleged constitutional violation, he may find he is entitled to only nominal damages (meaning a small sum, usually $1.00, to show that a violation occurred), and the costs of suit, such as the filing fee and copying costs.

### E.    *Weighing Plaintiff's Options*

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claim(s) will not be summarily dismissed at this stage. Defendants may still file a motion for dismissal or motion for summary judgment if the facts and law support such a motion. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims. It is Plaintiff's burden to thoroughly set forth the legal and factual basis for each claim.

Plaintiff may want to weigh his options at this point, given the uncertainty of recovering significant damages or prospective injunctive relief. The Court offers a pre-answer mediation option, which permits the Plaintiff, Defendants, and Defendants' counsel to meet with a settlement judge to try to settle the case before the $350 filing fee is due. Plaintiff should **not** choose this option if he is willing to settle only for a large amount of money. However, if Plaintiff is willing to settle for $0-350 and/or a policy clarification or change, then these are the types of remedies available in pre-answer mediation. If Plaintiff chooses this option, then he should file a notice with the Court within 30 days after entry of this Order, and then Defendants will be given an opportunity to notify the Court whether they wish to engage in pre-answer mediation. Otherwise,

**INITIAL REVIEW ORDER  13**

Plaintiff must pay the $350 fee; request issuance of summonses from the Clerk of Court; and serve Defendants Valdez and CCA to proceed with litigation.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Application for Leave to Proceed in Forma Pauperis (Dkt. 4) is DENIED.

2. Plaintiff may proceed on a § 1983 claim against Warden Valdez (for monetary damages only), and the state-law negligence and defamation claims against Warden Valdez and CCA. Plaintiff may not proceed with the following claims: claims against Tom Kessler, claims against Joseph Cardona; claims against Chester Penn; claims against Warden Wengler; § 1983 claims against CCA; claims for injunctive relief; and HIPAA claims.

3. Plaintiff shall have 30 days after entry of this Order to file a request for preanswer mediation or a notice of voluntary dismissal.

4. If Plaintiff prefers to proceed with litigation, he must accomplish service of process on Defendants Valdez and CCA within 120 days after entry of this Order, and Plaintiff must pay the filing fee of $350 no later than 150 days after entry of this Order. Failure to follow these deadlines may result in dismissal of Plaintiff's case without prejudice.



DATED:  **July 18, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**INITIAL REVIEW ORDER  15**